**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREW DEPAOLO, ET AL.,** | ) | **CASE NO.1:05CV944 &** |
| | ) | **1:05CV945** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **BRUNSWICK HILLS POLICE DEPT.** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

<u>**Introduction**</u>

This matter comes before the Court on Defendants' Motions for Summary Judgment

pursuant to Federal Rule of Civil Procedure 56. (ECF DKT #91 & 93.) Plaintiffs DePaolos and

Anne Grunder allege in their complaints that Defendants violated their constitutional rights by

the manner in which they executed arrest warrants for Steven DePaolo and Anne Grunder. They

further allege state law claims, including a variety of tort claims and a dereliction of duty claim.

This Court grants summary judgment in favor of Defendants on all claims alleged except for the

Fourth Amendment claims that Plaintiffs' constitutional rights were violated by Defendants'

1

failure to knock and announce before entering the residence and Plaintiffs' Steven Depaolo and Anne Grunders claims of unreasonable seizure for being forced to remain naked for an unreasonable length of time.  However, on the knock and announce claim, summary judgment is granted in favor of some of the Defendants.

### Factual Background

On April 5 and 6, 2004, arrest warrants were issued for Steven DePaolo and Anne Grunder based on indictments for drug trafficking.  This was not the first time of arrest for Steven DePaolo.  He was previously arrested for possession of drugs and drug paraphernalia, but on those occasions the arrests occurred without incident, and he was not found in possession of firearms.  The most recent of these arrests, prior to the one at issue, occurred in January of 2004 at the residence of Steven DePaolo's parents, Andrew and Vivian DePaolo in Brunswick Hills. Steven DePaolo and Anne Grunder had been living there since at least October 2003, after Steven DePaolo's previous home was foreclosed upon.  Steven DePaolo posted bail, but the bond was revoked in March.  On April 2, 2004, Steven DePaolo entered a plea of no contest to the indictment and was put on house arrest with an electronic monitor.

The specific incident giving rise to the arrest warrants at issue occurred in August 2003. The Medina County Drug Task Force (MCDTF) was to serve the warrants.  Since the MCDTF learned that Steven DePaolo and Ann Grunder were living at Andrew and Vivian DePaolo's residence in Brunswick Hills, the Brunswick Hills Police Department was asked to assist in serving the arrest warrants.  Sgt. Klopfenstein of the Brunswick Hills police was the main contact with the MCDTF.  The MCDTF informed Sgt. Klopfenstein that a confidential informant had informed the MCDTF that Steven DePaolo possessed a .40 caliber automatic loaded pistol.

2

After a meeting to discuss service of the arrest warrants, it was determined that the Combined Emergency Response Team (C.E.R.T.), whose use was authorized by Chief Osiecki of the Brunswick Hills Police Department, would be used to execute the warrants in the early morning of April 13, 2004.  This plan was aimed at reducing the risk to all involved.  The C.E.R.T. team consisted of officers from the Brunswick Hills Police Department and the Brunswick Police Department.

After meeting at 4:00 am on April 3, 2004 to discuss the operational plan, the C.E.R.T. team arrived at the DePaolo residence at 5:30 AM.  Defendants allege they knocked and announced prior to breaking down the front door after no response from inside the house was detected.  However, Plaintiffs allege no knock and announce occurred and the first thing they heard was the breaking in of the front door.

After entering the home, three members of the C.E.R.T. team, two Brunswick officers and Officer Murphy of Brunswick Hills, directly moved to the back upstairs bedroom where Steven DePaolo and Anne Grunder had been sleeping.  When the officers entered the bedroom they demanded that DePaolo and Grunder, who were nude under the covers, show their hands.  Although Grunder complied, DePaolo failed to show his hands.  Officer Murphy approached the bed, removed the cover from DePaolo, and pulled him to the floor.  Steven DePaolo claims that in the process, he hit his mouth on the end of Officer Murphy's rifle and that an officer put a foot on his head to pin him to the ground (but DePaolo alleges no injuries from this).  After another officer handcuffed DePaolo, Officer Murphy moved to the other side of the bed where he handcuffed Grunder and escorted her away from the bed.  Officer Murphy states that he draped a bathrobe over Grunder's shoulders within ten to fifteen seconds after she was escorted away

3

from the bed nude.  However, Grunder and DePaolo allege Grunder was not provided a bathrobe for at least ten minutes.  At some point, a sweatshirt was tied around DePaolo's waist.  Steven DePaolo and Ann Grunder allege they were left standing nude for ten to fifteen minutes before being dressed by the U.S. Marshals and escorted out of the house.  However, Defendants allege the total time the C.E.R.T. team was in the bedroom was no more than seven minutes before the U.S. Marshals entered and dressed DePaolo and Grunder and the C.E.R.T. team left.  During the time in the bedroom the C.E.R.T. team was searching.  Although a .22 caliber rifle was found in the living room of the house, neither a .40 caliber semi-automatic handgun nor drugs were found.

When Andrew and Vivian DePaolo heard the crashing at their front door they came down the stairs where they met other officers of the C.E.R.T. team.  Andrew and Vivian DePaolo were told at gunpoint to show their hands, and they were escorted into the living room where they were told to sit and be quiet.  They were held there until Steven DePaolo and Grunder were escorted out of the house.  The C.E.R.T. team cleared the scene by 5:49 am.

Plaintiffs Andrew and Vivian DePaolo, Steven DePaolo, and Anne Grunder brought this suit against the Brunswick Hills Township and Police Department, the City of Brunswick and Brunswick Police Department, and individual officers of the two police departments.  Their Complaints include claims under 42 U.S.C. § 1983 that Defendants violated Plaintiffs' Fourth, Fifth, Eighth, and Fourteenth Amendment rights by the manner in which the arrest warrants were executed.  The Complaints also include various state law claims, including tort claims and a dereliction of duty claim.  For the following reasons, this Court grants summary judgment in favor of Defendants on all of the claims except for the Fourth Amendment claims that Defendants did not knock and announce prior to entering the residence and unreasonable seizure

4

and made Plaintiffs Steven Depaolo and Anne Grunder remain naked for an unreasonable length of time.  However, on the knock and announce claim, summary judgment is granted for some of the Defendants.

## Law and Analysis

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is only material if its resolution might affect the outcome of the lawsuit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden of demonstrating the absence of any genuine issues of material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden of proof, the burden shifts to the adverse party who "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### B. Plaintiffs' Claims Are Not Barred By *Res Judicata*.

Plaintiff's claims are not barred by *res judicata*, as argued by Brunswick Hills Police Department and Township Trustees.  The broad doctrine of *res judicata* encompasses both claim preclusion (*res judicata*) and issue preclusion (collateral estoppel).  *Wilkins v. Jakeway*, 183 F.3d

528, 532 (6th Cir. 1999).  When a prior judgment is entered in state court, that judgment is entitled to the same preclusive effect that it would receive under the law of the state where it was entered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-85 (1984).  Collateral estoppel applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action."  *Thompson v. Wing*, 70 Ohio St. 3d 176, 183 (1994).  Under claim preclusion, the final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated and as to every theory of recovery that could have been presented.  *Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002).  The claims asserted by Plaintiffs here are neither collaterally estopped nor issue precluded.

Although in the criminal proceedings in the Court of Common Pleas Grunder and Steven DePaolo took issue with the manner in which they were arrested, facts and issues surrounding this police conduct were not actually litigated and were not determined by the court.  After being convicted of drug trafficking, Grunder appealed the denial of her motion to dismiss based on the trial court's conclusion that "the outrageous governmental conduct defense was part of the affirmative defense of entrapment and could not be maintained separately."  *Ohio v. Grunder*, No. 04CA0071-M, 2005 WL 1026690 at *1 (Ohio App. May 4, 2005).  Although the Court of Appeals found the outrageous governmental conduct defense can be maintained separately from the defense of entrapment, the court still found that dismissal was proper because an outrageous governmental conduct defense "involves due process violations with the crime itself, not the subsequent arrest," and Grunder and Steven DePaolo did not bring due process claims involving

6

the crime itself.  *Id.*  The Court of Appeals in *Ohio v. DePaolo*, No. 04CA0090-M, 2005 WL 1339304 (Ohio June 8, 2005), adhered to *stare decisis* and came to a similar conclusion. Although the Court of Appeals recognized there were serious allegations stemming from the police execution of the warrant, no determinations of fact or law were made concerning the manner of arrest.  Additionally, the claims by Andrew and Vivian DePaolo are neither collaterally estopped nor issue precluded because they were not parties or in privy with the parties of the prior actions, i.e. Grunder and Steven DePaolo.  For these reasons, Plaintiffs' claims are not barred by collateral estoppel or issue preclusion.

**C. Federal Constitutional Claims**

      **1. Fourth Amendment Claims**

      **a. Absence of search warrant**

    Defendants' lack of a search warrant to enter the DePaolo residence did not constitute a constitutional violation because Defendants had arrest warrants for Grunder and Steven DePaolo. In *Steagald v. United States*, 451 U.S. 204 (1981), the Supreme Court discussed the circumstances in which a search warrant is necessary in addition to an arrest warrant.  Although recognizing the holding in *Payton v. New York*, 445 U.S. 573 (1980) that an arrest warrant was sufficient for entry of a suspect's own residence to effect his arrest, the Supreme Court decided that the home of a third party could only be searched in presence of a search warrant (or other exigent circumstances).  *Steagald*, 451 U.S. at 214.  Unlike the situation in *Steagald*, in which the suspect for whom the police had an arrest warrant was not permanently residing at the house, here Steven DePaolo and Anne Grunder were residing at the home of Andrew and Vivian DePaolo.  Steven DePaolo and Anne Grunder had been residing at Andrew and Vivian

7

DePaolo's home for about three or four months prior to the service of the arrest warrants in April 2004, having moved there directly after Steven DePaolo's home had been foreclosed upon. (Andrew DePaolo Dep. 29-31.)  Since the DePaolo home was the residence of Steven DePaolo and Anne Grunder, the arrest warrant alone was sufficient for entry of the home.

**b. Detention of Defendants in unclothed state**

Plaintiffs Steven DePaolo and Anne Grunder allege Defendants violated their constitutional rights by forcing them to leave the bed naked and stand naked for a period of time before being dressed and escorted out of the house.  When determining if the Defendants can be held liable for their conduct, this Court must consider whether Defendants are entitled to qualified immunity.  In doing so, the initial inquiry is whether Defendants' acts as alleged by Plaintiffs violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no constitutional violation occurred the inquiry ends; however, if a right has been violated, it must be determined if the constitutional right was clearly established.  *Id.*  Questions of fact prevent a determination of whether a constitutional right was violated and questions of fact on the reasonableness of the Defendants actions prevents this Court finding Defendants are entitled to qualified immunity.

The facts of this incident are contested, as both sides offer disparate estimates on the length of time Steven DePaolo and Anne Grunder were detained, either naked or partially naked. Defendants contend the total time spent in the house was no more than nineteen minutes, as recorded by the C.E.R.T. call out report.  The officers maintain the time spent by the C.E.R.T. team in the bedroom could be no more than seven minutes, after which the U.S. Marshals entered the bedrooms and dressed Steven DePaolo and Grunder.  (Murphy Dep. 78.)  Further,

Defendants argue that within fifteen or twenty seconds of moving Anne Grunder away from the bed, a bathrobe was draped over her shoulders.  (Murphy Dep. 78.)  Although they have provided conflicting testimony, Plaintiffs allege the time spent standing nude was significantly greater, i.e. ten to fifteen minutes.  (Grunder Dep. 29; Steven DePaolo Dep. 62.)  Anne Grunder's affidavit says the total time spent naked or partially naked may have been as much as twenty minutes.  At some point, a sweatshirt was tied around Steven DePaolo's waist.  (Grunder Dep. 29; Steven DePaolo Dep. 47.)  By Grunder's own statements, during the time she was left standing nude she watched the officers search the room, one of whom kept an eye on her while he was searching.  (Grunder Dep. 30-31.)

The Supreme Court has held that in Fourth Amendment cases, "special circumstances, or possibly a prolonged detention" may result in a violation of the detained individual's constitutional rights. *Michigan v. Summers,* 452 U.S. 692, 705 n.21(1981).  The United States Supreme Court has held, the manner in which a seizure is conducted implicates the arrestees Fourth Amendment rights.   "...[T]his Court, by balancing the extent of the intrusion against the need for it, has examined the reasonableness of the manner in which a search or seizure is conducted. To determine the constitutionality of a seizure '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tennessee v. Garner, 471 U.S. 1, 7-8 (1985) quoting United States v. Place,* 462 U.S. 696, 703 (1983). Court's that have examined this issue have found forcing a person to remain unclothed during a search may be a violation of that person's Fourth Amendment rights, depending on the circumstances. *Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991)(requiring an individual to remain naked for twenty to thirty minutes while

9

exposed to cold January air violates individuals clearly established constitutional rights.)   The plaintiff in that case also claimed that he was only offered a woman's dress and that the officers made derogatory remarks about his nudity.  *Id.* at 1153. *Armstead v. Township of Upper Dublin,* No. Civ. A 03-CV-3608, unreported 2004 WL 2743451 (E.D. Pa. Nov. 23, 2004), (using excessively tight handcuffs and removing arrestee from home without allowing him to cover his nakedness violated arrestee's Fourth Amendment rights and was clearly established in 2003). *Spencer v. Moreno,* No. 4:02CV3049, unreported 2003 WL 1043318, ( D. Neb. March 11, 2003) citing *Hill v. McKinley,* 311 F.3d 899, 904 (8th Cir.2002). ("Fourth Amendment is violated when a female arrestee is allowed to remain naked and exposed to male guards for a substantial period of time after the threat to security and safety posed by the arrestee has passed.")

The Sixth Circuit has held when examining whether a right has been clearly established, "pre-existing law need not address the very question at hand; rather, 'the contours of the right must be sufficiently clear.'" *Logsdon v. Hains,* (No. 06-4085) --- F.3d ----, 2007 WL 1946851, (6th Cir. July 06, 2007), quoting *Center for Bio-Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 830 (6th Cir. 2007).

A recent Supreme Court decision dealt with a situation in which police officers entered a house for which they had a search warrant, ordered the residents, who were naked, out of bed, and detained them for about two minutes before realizing that the armed suspects they were looking for no longer lived in the house.  *Los Angeles Cty. v. Rettele*, 127 S.Ct. 1989 (2007). The Supreme Court found the plaintiffs' constitutional rights were not violated because the deputies acted reasonably to protect their safety.  *Id.* at 1993.  The court emphasized, however, that its finding was "not to say, of course, that the deputies were free to force [plaintiffs] to

10

remain motionless and standing for any longer than necessary." *Id.* at 1993.  So, while a two-minute period of naked detention is not sufficient to create a constitutional violation, it is possible that a lengthier period of naked detention would constitute a constitutional violation. The Court finds that there remains genuine issues of fact regarding the amount of time Defendants were required to remain naked. As the Supreme Court has determined in *Monroe v. Pape,* 365 U.S. 167 (1961) overruled on other grounds, *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978), that requiring someone stand naked during a search may constitute a violation of one's Fourth Amendment rights, the Court finds whether or not a Constitutional violation occurred is dependent on a factual resolution by the jury.  Therefore, the Court denies Defendants' Motion for Summary Judgment on Plaintiffs' claim of Fourth Amendment violation for leaving them naked and uncovered for a prolonged period of time during their arrest and denies Defendants' qualified immunity defense, as the length of time Plaintiffs were required to stand naked presents a question for the jury whether such period was unreasonable.  This is especially so for Grunder, a female arrestee in the custody of male law enforcement officers.

**c. Absence of knock and announce**

This Court does not grant summary judgment on Plaintiffs' claim that Defendants violated their Fourth Amendment rights by not knocking and announcing before entering their home.  The federal knock and announce statute, 18 U.S.C. § 3109, provides that the "officer may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance. . . ." *See United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998).  Whether police officers knock and announce before forcibly entering a home is part of the reasonableness analysis under the Fourth Amendment.  *Wilson v.*

*Arkansas*, 514 U.S. 927, 929 (1995).  In this case, there is an issue of fact whether the officers knocked and announced prior to entering the home of the DePaolos.  Defendants have stated that officers did knock and announce before entering the residence.  (Murphy Dep. 31-32; Fink Dep. 25-26.)  However, Plaintiffs state that "[t]here was no knock."  (Andrew DePaolo Dep. 74.) Plaintiffs argue that Andrew DePaolo is a light sleeper who wakes up between 5:30 A.M. and 6:00 A.M. without an alarm clock (Andrew DePaolo Dep. 47), so if the officers had knocked and announced, he would have heard it.  Therefore, whether the officers knocked and announced before entering the DePaolo residence is a question of fact which cannot be resolved at this summary judgment stage.

However, Defendants argue that summary judgment should still be granted because even if there were no knock and announce, exigent circumstances existed justifying a forced entry. Many law enforcement interests have been found to justify an unannounced entry.  Factors that would suggest an unannounced entry is appropriate include a threat of physical violence to the officers or the possibility that an announced visit would lead to destruction of evidence by the suspect.  *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995).  Other circumstances found to justify an unannounced entry include beliefs by the officers that someone is in imminent peril or that the suspect is trying to flee or escape.  *United States v. Francis*, 646 F.2d 251, 258 (6th Cir. 1981). Defendants argue that knowledge from a confidential informant of the Medina County Drug Task Force that "it was a good possibility [Steven] DePaolo was carrying a .40 caliber semi-automatic loaded pistol on his person or within close proximity of where he was at" (Murphy Dep. 61) sufficiently establishes exigent circumstances for entering unannounced.  In support, Defendants point to *Reneer v. Wall*, in which the court found that an unannounced entry was

justified when the suspect was known to be armed.  916 F.2d 713 (6th Cir. 1990).  However, the court based its finding not only on the officers' knowledge that the suspect was armed but instead viewed the facts of the case collectively, which included knowledge that the suspect was in possession of drugs and had a history of destroying evidence.  *Id.*  Although Steven DePaolo and Grunder were wanted for drug trafficking, Defendants do not argue any knowledge of drug possession or history of destruction of evidence to support a finding of exigent circumstances.  When courts find exigent circumstances for an unannounced entry, they are based on more than knowledge of possession of a gun.  *See United States v. Ramirez*, 523 U.S. 65 (1998) (exigent circumstances when subject of arrest warrant reportedly had access to large supply of weapons and was a prison escapee with a violent past); *United States v. Martin*, 112 Fed. Appx. 456 (6th Cir. 2004) (exigent circumstances when suspect was considered armed and dangerous and was known to have violent tendencies); *United States v. Pelayo-Landero*, 285 F.3d 491 (6th Cir. 2002) (exigent circumstances existed when police knew there was rifle inside, there was likelihood of destruction of evidence, and a homicide suspect could be present); *United States v. Williams*, 198 F.3d 248 (6th Cir. 1999) (exigent circumstances existed when suspect was known to carry gun to door with him); *United States v. Smith*, 386 F.3d 753 (6th Cir. 2004) (a report from a confidential informant that there were several handguns and shotguns in house of suspect is not enough to create exigent circumstances).  Therefore, this Court finds that exigent circumstances to justify an unannounced entry do not exist, and since there is still a question of fact whether a knock and announce occurred, summary judgment is inappropriate on this claim.[1]

---

[1]     Defendants from Brunswick Hills additionally argued that the existence of the indictments provided probable cause which justified all of their actions surrounding the arrests.  However, this position is untenable in light of the wealth

However, summary judgment is granted to Defendants Brunswick Hills Township, Brunswick Hills Police Force, City of Brunswick, and Brunswick Police Department based on the *Monell* doctrine.  While the Supreme Court in *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978), held that municipalities were suable persons for 42 U.S.C. § 1983 actions, the court held that municipal liability could only be imposed under certain circumstances. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).  For municipal liability to exist, the constitutional violation at issue must be caused by a government policy or custom.  *Id.* at 810 (citing *Monell*, 436 U.S. at 694).  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."  *Id.* at 823-24.  Plaintiffs do not directly address Defendants' argument that the *Monell* doctrine applies, instead discussing unrelated supervisory liability and the MCDTF's practice of making pre-dawn entries to execute warrants.[2]  Plaintiffs provide no evidence suggesting the Brunswick Hills Township and Police Department or the City of Brunswick and Brunswick Police Department have operational or training policies or customs that would lead to a constitutional violation consisting of a failure to knock and announce.  Therefore, this Court grants summary judgment on this claim for Defendants Brunswick Hills Township Trustees, Brunswick Hills Police Department, City of Brunswick, and City of Brunswick Police Department.

---

of case law in which probable cause existed for a warrant, but the court still found the manner in which the arrest or search was carried out to be unconstitutional. *E.g. United States v. Smith*, 386 F.3d 753 (6th Cir. 2004).

[2]The MCDTF is no longer a party to this lawsuit.

14

Additionally, Defendants argue that Brunswick Hills Sergeant Klopfenstein, Patrolpersons Stask and Wittuhn, and Sergeant Kovach should be granted summary judgment because they were not involved in the search and were merely on the scene as backup officers. "As a general rule, mere presence at the scene of search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)). As for Officer Klopfenstein, Defendants present evidence that he was only on perimeter security. (Klopfenstein Dep. 18-19.)  Hence, he was a backup officer who could not have participated in an unannounced entry at the door of the residence.  As for Sergeant Kovach, Defendants present evidence that while the alleged knock and announce was occurring (or not occurring), he was sitting in a police vehicle parked in the driveway running overhead lights so that anyone observing the entry would know this was a police operation.  (Klopfenstein Dep. 18-19; Kovach Dep. 25.)  Plaintiffs do not refute any of this evidence.  As for Officer Wittuhn and Stask, although Defendants allege they were only backup officers, they do not cite any evidence in the record to support their conclusion.  Therefore, this Court grants summary judgment on this claim in favor of Defendants Sergeants Klopfenstein and Kovach, but denies summary judgment for Patrolpersons Stask and Wittuhn.

Defendants also argue summary judgment should be granted in favor of Officer Osiecki of the Brunswick Hills Police Department because, although he made decisions concerning the service of the arrest warrants, he was not at the scene when any alleged constitutional violation occurred.  Nonetheless, Plaintiffs argue that Officer Osiecki still has supervisory liability. However, "a supervisory official's failure to supervise, control or train the offending individual

15

is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it,'" and "at a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)).  While Plaintiff questions Officer Osiecki's decision to make a pre-dawn entry with a C.E.R.T. team based on the information about Steven DePaolo possessing a handgun, Plaintiff does not offer any evidence suggesting that Officer Osiecki implicitly authorized, approved, or knowingly acquiesced to the alleged failure of the officers at the DePaolo residence to knock and announce.  Therefore, this Court also grants summary judgment in favor of Officer Osiecki of the Brunswick Hills Police Department.

### d. Excessive use of force

Plaintiffs present a variety of excessive force claims.  Steven DePaolo claims the officers used excessive force in dragging him out of bed, while Andrew and Vivian DePaolo claim that the officers used excessive force by holding them at gunpoint in the living room during the search of the house.  The reasonableness of the use of force during a search and seizure is determined through a balancing of the quality of the intrusion on the individual's Fourth Amendment interests against any countervailing governmental interests.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Additionally, this reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).  Neither the officers' treatment of Steven DePaolo, nor their treatment of Andrew and Vivian DePaolo, constitute excessive force.

16

The officers' treatment of Steven DePaolo when getting him out of bed does not constitute excessive force, even if this court assumes Steven DePaolo's version of the facts. According to Steven DePaolo, one of the officers pulled him out of bed and threw him to the ground.  (Steven DePaolo Dep. 31.)  In the process, Steven DePaolo hit the end of the officer's rifle with his mouth, resulting in a chipped tooth.  *Id.*  Once he was on the ground, an officer put his foot on Steven DePaolo's head to pin him down but caused no injury.  *Id.* at 44-45.  These facts do not suggest the use of excessive force, especially when a court must take into account factors such as "whether the suspect poses an immediate threat to the safety of the officers or others."  *Graham*, 490 U.S. at 396.  In this situation, the officers entering the room could have reasonably believed Steven DePaolo posed a threat.  They had information from an informant that Steven DePaolo possessed a gun.  Additionally, when the officers commanded Steven DePaolo and Grunder to show their hands, only Grunder showed her hands, while Steven DePaolo failed to comply.  (Murphy Dep. 40-41.)  Steven DePaolo admits he was told to show his hands (Steven DePaolo Dep. 30), but he does not refute Defendants' account that he did not show his hands.  For these reasons, this Court grants summary judgment in favor of Defendants on Steven DePaolo's individual claims of excessive force.

Likewise, the detainment of Andrew and Vivian DePaolo at gunpoint for the time that it took officers to arrest Steven DePaolo and Grunder and escort them out of the house does not constitute excessive use of force in violation of the Fourth Amendment.  The "police have the limited authority to briefly detain those on the scene, even wholly innocent bystanders, as they execute a search or arrest warrant."  *Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir. 2003).  Such detention is important because the "risk of harm to both the police and the occupants is

17

minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981).  Therefore, this Court grants summary judgment in favor of Defendants on any excessive force claims relating to the detainment of Andrew and Vivian DePaolo.

**e. Reliance on false information**

Plaintiffs claim the pre-dawn entry by the C.E.R.T. team was unconstitutional because it was premised upon "false information" from an informant that Steven DePaolo had possession of a .40 caliber semi-automatic handgun.  Whether the information was, in fact, false is of course a question of fact, because, although Steven DePaolo claims he has never carried a gun (Steven DePaolo Dep. 63), his self-serving deposition is not made true by the failure of the officers to find a .40 caliber semi-automatic handgun in the residence.  However, the veracity of the information provided by the informant to the MCDTF is not relevant, because Defendants are entitled to rely on the information provided by the MCDTF, another law enforcement agency requesting aid in effecting an arrest.  *See Whitely v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568 (1971).  While *Whitely* limits the insulation provided by such reliance in situations involving an illegal warrantless arrest, the present case does not involve such an illegal warrantless arrest, because even Plaintiffs do not dispute that probable cause existed for the arrest of Steven DePaolo and Anne Grunder due to the indictments on which the arrest warrants were issued.  *Whitely* does not speak to the issue here concerning reliance on information that determines the manner in which an arrest is carried out.  Therefore, this Court grants summary judgment in favor of Defendants on this claim.

**ii. Eighth Amendment Claims**

The Eighth Amendment is inapplicable to Plaintiffs' claims.  An examination of the Eighth Amendment's history and interpretation by the Supreme Court shows that it was designed to protect those convicted of crimes, and decisions concerning whether punishments are cruel and unusual are limited to criminal punishments.  *Ingraham v. Wright*, 430 U.S. 651, 664, 666 (1977).  Since the circumstances of this case involve the method of arresting Steven DePaolo and Grunder rather than their subsequent convictions and criminal punishment, this Court grants summary judgment in favor of Defendants on Plaintiffs' Eighth Amendment claims.

**iii. Fifth and Fourteenth Amendment Due Process Claims**

Plaintiffs allege due process claims under the Fifth and Fourteenth Amendments.  Since Fifth Amendment Due Process applies to the federal government while Fourteenth Amendment due process applies to states, any due process claim alleged by Plaintiffs would more appropriately fall under Fourteenth Amendment due process.  However, Plaintiffs' due process claims under the Fourteenth Amendment are inapplicable.  Where "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Since the Fourth Amendment explicitly addresses the search and seizures and warrants in this case, Plaintiffs' claims must be analyzed under the Fourth Amendment rather than under the Fourteenth Amendment.  Therefore, this Court grants summary judgment in favor of Defendants on Plaintiffs' Fourteenth Amendment claims.

**D. State Law Claims**

**i. Dereliction of Duty under Ohio Revised Code § 2921.44**

This Court grants summary judgment in favor of Defendants on Plaintiffs' claim that Defendants violated Ohio Revised Code § 2921.44's prohibition of dereliction of duty.  The statute provides that "[w]hoever violates this section is guilty of dereliction of duty, a misdemeanor of the second degree."  Ohio Rev. Code § 2921.44(F).  As explained in the concurring opinion of *Stoyer v. Summit County Executives*, Ohio Rev. Code § 2921.44,

> "is part of the criminal code and is intended to deter an officer from neglecting his
> duties by providing criminal sanctions for such failure. [It] does not also establish
> a civil liability for such failure and cannot be so construed.  A criminal statute
> which does not purport to create civil liability but merely provides . . . criminal
> sanctions for an officer's dereliction of duty is not to be construed as establishing
> a statutory civil liability."

38 Ohio App. 3d 171, 172 (1988) (George, J., concurring) (citing *Eisenhuth v. Moneyhon*, 161 Ohio St. 367 (1964)).  Since dereliction of duty falls under the criminal code, it is inapplicable to the civil lawsuit brought by Defendants.

**ii.  Tort claims**

Plaintiffs' complaint states a variety of tort claims, including: (1) battery, (2) assault, (3) negligent conduct, (4) wanton and reckless conduct, (5) intentional infliction of extreme emotional distress, (6) negligent infliction of extreme emotional distress, (7) negligent hiring, and (8) inflicting terror (including false arrest and false imprisonment of Andrew and Vivian DePaolo).  Defendants assert this Court should grant summary judgment in favor of Defendants on these claims because Ohio Revised Code § 2744 provides Defendants sovereign immunity.

20

Although there have been questions about whether this statute violates the Ohio Constitution due to previous findings of unconstitutionality, *see Kammeyer v. Sharonville*, 311 F. Supp. 2d 653 (S.D. Ohio 2003), the Sixth Circuit Court of Appeals has held the statute constitutional because the Court of Appeals of Ohio has consistently found the statute constitutional, and a majority of the Ohio Supreme Court has never found the statute to be unconstitutional. *Ellis ex rel. Pendergrass*, 455 F.3d 690, 698 (6th Cir. 2006). The Sixth Circuit Court of Appeals rejected the previous finding of unconstitutionality, which was based on dicta in a plurality opinion of the Ohio Supreme Court. *Id.* at 697-98. Therefore, this statute may provide immunity to Defendants.

The township and police department defendants in this case are immune from Plaintiffs' tort claims because

> "[e]xcept as provided in division (B) of this section, a political subdivision
> is not liable in damages in a civil action for injury, death, or loss to person
> or property allegedly caused by any act or omission of the political
> subdivision or an employee of the political subdivision in connection with a
> governmental or proprietary function."

Ohio Rev. Code § 2744.02(A)(1). None of the exceptions in division (B) are applicable to this case because they involve negligent operation of motor vehicles, negligent performance of proprietary functions, negligent maintenance of roads, negligence and defects on public grounds, and circumstances in which civil liability is expressly imposed by the Ohio Revised Code. Ohio

Rev. Code § 2744.02(B).[3]  As for the individual police officers, they are immune from liability

unless their acts were manifestly outside the scope of their employment, their acts were done

with "malicious purpose, in bad faith, or in a wanton or reckless manner," or if civil liability is

expressly imposed by a section of the Revised Code.  Ohio Rev. Code § 2744.03(A)(6).

Plaintiffs do not argue Defendants' acts were manifestly outside the scope of their employment

or that any section of the Revised Code imposes liability.  Plaintiffs' complaint does allege

wanton and reckless conduct and malice on the part of Defendants.  However, Plaintiffs do not

address or refute in their Opposition to Defendants' Motion for Summary Judgment Defendants'

arguments about a lack of evidence or facts to support a finding of wantonness, recklessness,

malice, or bad faith on the part of the individual defendants.  In fact, Plaintiffs fail to address

Defendants' arguments about sovereign immunity under Ohio Revised Code § 2744 entirely.

Therefore, this Court  grants summary judgment for all Defendants on all of the tort claims put

forth by Plaintiffs.

## Conclusion

For the reasons stated above, this Court grants summary judgment for Defendants on

Plaintiffs' state law claims.  As for the constitutional violation claims, this Court grants summary

judgment in favor of Defendants on all claims except for the Fourth Amendment claim relating

to the alleged failure of Defendants to knock and announce prior to entering the DePaolo

residence and the unreasonableness of the Defendants in forcing Anne Grunder and Steven

DePaolo to remain naked for an allegedly extended period of time.  However, on the knock and

---

[3]     The provision of police services is expressly categorized as a governmental
       function rather than a proprietary function.  Ohio Rev. Code § 2744.01(C)(2)(a).

22

announce claim, summary judgment is granted for some of the defendants: Brunswick Hills

Township Trustees, Brunswick Hills Police Department, City of Brunswick, City of Brunswick

Police Department, Officer Osiecki, Sergeant Klopfenstein, and Sergeant Kovach.  However,

summary judgment on the Fourth Amendment knock and announce claim is denied with respect

to the other Defendants.

     **IT IS SO ORDERED.**


               **s/Christopher A. Boyko**
               **CHRISTOPHER A. BOYKO**
               **United States District Judge**

**July 17, 2007**